## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GARY J. POTTER and**
**MELISA C. POTTER**
*Plaintiffs*

**v.**

**OCHSNER MEDICAL**
**CENTER- KENNER, L.L.C., and**
**OCHSNER CLINIC FOUNDATION**
*Defendant*

**CIVIL ACTION NO. :  2:18-cv-11116**

**JUDGE:**

**MAGISTRATE JUDGE:**

---

## COMPLAINT

---

**NOW INTO COURT**, through his undersigned counsel, come Plaintiffs, Melisa C. Potter and Gary J. Potter, who respectfully represents as follows:

## JURISDICTION AND VENUE ALLEGATIONS:

### 1.

This court has subject-matter jurisdiction herein pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 for Plaintiffs' claims arising under federal law. This is an action seeking injunctive relief, declaratory relief, attorneys fees and costs arising out of Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"); Section 504 of the rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"); Section 1557 of the Patient Protection and Affordable Care Act, 42 USC § 18116 (*"ACA"* or *"Section*

*1557"*). Plaintiff also seeks compensatory damages pursuant to the RA and Section 1557.
Plaintiffs assert that they were qualified, disabled individuals within the meaning of the
ADA, RA and Section 1557.  Plaintiffs also assert that they were not provided reasonable
accommodations by the Defendant and thereafter sustained harms and losses.

**2.**

Venue is appropriate in the United States District Court for the Eastern District of
Louisiana, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this action
occurred in this judicial district and Defendant Ochsner Medical Center resides in this
same judicial district.

**PARTIES:**

**3.**

Plaintiff, GARY J. POTTER, *(hereinafter, "Mr. Potter")* is a person of the full age of
majority and a citizen and resident of East Baton Rouge Parish, Louisiana and is an
individual residing in Baton Rouge, Louisiana. Mr. Potter communicates primarily in
American Sign Language *(hereinafter "ASL"),* has limited English proficiency, and is
substantially limited in the major life activities of hearing and speaking and is a qualified
person with a disability within the meaning of the ADA, RA, and Section 1557.

**4.**

Plaintiff, MELISA C. POTTER, *(hereinafter, "Mrs. Potter")* is a person of the full age
of majority and a citizen and resident of East Baton Rouge Parish, Louisiana and is an

2

individual residing in Baton Rouge, Louisiana. Mrs. Potter communicates primarily in American Sign Language *(hereinafter "ASL")*, has limited English proficiency, and is substantially limited in the major life activities of hearing and speaking and is a qualified person with a disability within the meaning of the ADA, RA, and Section 1557.

**5.**

Defendant, OCHSNER MEDICAL CENTER - KENNER, L.L.C., *(hereinafter "Ochsner")*, is a Louisiana domestic Limited Liability Company with its principal business establishment located at 1514 Jefferson Hwy., New Orleans, LA  70121. Defendant is a place of public accommodation under federal antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making Defendant subject to the requirements of the ADA, RA, and Section 1557.

**6.**

Defendant, OCHSNER CLINIC FOUNDATION, *(hereinafter referred to collectively with Ochsner Medical Center-Kenner, L.L.C. as "Ochsner")*, is a Louisiana domestic non-profit corporation with its principal business establishment located at 1514 Jefferson Hwy., New Orleans, LA  70121.  Defendant is a place of public accommodation under federal antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making Defendant subject to the requirements of the ADA, RA, and Section 1557.

## FACTUAL ALLEGATIONS

### 7.

The Plaintiffs, Mr. and Mrs. Potter, are married to each other and are profoundly Deaf individuals who communicate primarily through ASL which is their expressed, preferred, and most effective means of communications. They are both Deaf from birth and although Mrs. Potter has a limited proficiency of reading lips and uses her voice when necessary, Mr. Potter cannot read lips or use his voice. Although, they have a limited ability to read and write English, their native language is ASL and any communication involving complex topics, especially of a medical nature necessitates the use of ASL.

### 8.

On November 16, 2017 Mrs. Potter was a patient of Dr. James B. Wooldridge, Jr., Ochsner Bariatric Surgeon, and was scheduled for a Gastric Bypass Surgical revision procedure at Ochsner Medical Center - Kenner. Gastric Bypass procedures, especially revision surgeries are only performed by select specialists in the field such as Dr. Wooldridge. Since Dr. Wooldridge's weight loss practice is part of the Ochsner Clinic Foundation, his surgical procedures and in-patient treatment are performed at the Ochsner Medical Center – Kenner.

4

**9.**

In anticipation of her need for an ASL interpreter during her hospitalization, Mrs. Potter specifically requested in advance of her admission that an ASL interpreter be present on the date and time of her admission and throughout her hospital stay in order to provide her and her husband with the necessary means to communicate effectively with the hospital staff, nurses and physicians.

**10.**

An ASL interpreter was provided pursuant to Mrs. Potter's request for the pre-admission check-in process beginning at 10:30 a.m. on November 16, 2017; however, the interpreter's assignment ended at 3:00 p.m. and she was required to leave at that time.

**11.**

Prior to going into surgery, Mrs. Potter, through her ASL interpreter, specifically requested her bedside nurse to contact the interpreter service for a replacement interpreter to be present while she is in surgery to facilitate communication between Ochsner's staff, nurses, and physicians and her husband to keep him informed of her status. She also requested that the replacement interpreter be present in the recovery room when she awaked from her procedure, so she would be able to communicate with her doctor and/or his nurse.

**12.**

After the ASL interpreter's departure at 3:00 p.m. on November 16, 2017, to no additional interpreter services or other auxiliary aids were provided by Ochsner to facilitate effective and adequate communication with Mr. and Mrs. Potter for the remainder of her hospital stay.

**13.**

Throughout her hospitalization Mrs. Potter repeatedly requested an ASL Interpreter to facilitate effective communication with Ochsner's staff nurses and physicians.

**14.**

Throughout her hospitalization, after the ASL interpreter's departure at 3:00 p.m. on November 16, 2017, Mr. and Mrs. Potter were entitled to, requested on numerous occasions, and required an ASL Interpreter.  Ochsner repeatedly and intentionally denied this request and ignored their obligation to provide the auxiliary aids and services necessary to ensure effective communication.

**15.**

On the morning of November 17, 2017, Mrs. Potter required an ASL interpreter in order to effectively communicate with her doctor to discuss her condition and outcome of her surgery. No interpreter was provided. Instead, Mrs. Potter was forced to read lips, use her voice and resort to use of her iPhone to communicate with the doctor.

**16.**

During the attempted conversation between Mrs. Potter and her doctor there was complex and detailed medical information relayed to her that she did not comprehend. This lack of effective communication between Mrs. Potter and her doctor led to confusion, fear, and anxiety regarding the outcome of her recent surgery.

**17.**

Also, on November 17, 2017, Mrs. Potter required an ASL interpreter for a radiology procedure *(a swallowing test)* and Upper GI requiring her to follow detained commands and provide feedback during the procedure.  Again, an ASL Interpreter was not provided.

**18.**

Due to the lack of effective communication during this radiology procedure Mrs. Potter was confused, fearful and suffered extreme anxiety as she was unable to fully comprehend what was taking place and was forced to resort to lip reading and using her voice with Ochsner's nurses and radiology technicians.

**19.**

On November 16, 2017, Mr. Potter required an ASL interpreter while waiting for his wife to come out of surgery.  Although an interpreter was initially provided and present when Mrs. Potter went into surgery, the interpreter left when her assignment ended at 3:00 p.m. Mrs. Potter was still in surgery at that time.  This left Mr. Potter with

no way to communicate with Ochsner's staff, nurses and physicians concerning his wife's status.

**20.**

Mr. Potter was initially informed that Mrs. Potter's surgery would take approximately one and one-half (1 ½) hours, but instead, due to the complex nature of the procedure, the surgery lasted five (5) hours.

**21.**

While Mrs. Potter was in surgery, due to his inability to communicate with the Ochsner staff and nurses without an ASL interpreter, Mr. Potter became worried, fearful and suffered extreme anxiety not knowing of developments or complications that may have arisen.  It was not until Mrs. Potter's adult hearing son, Jason Blakeney, arrived at the hospital to communicate with the Ochsner staff and nurses on behalf of Mr. Potter that he learned of his wife's status and the reason for the extend surgery.

**22.**

Jason Blakeney was not fluent in ASL but as the only option available he attempted to interpret for Mr. Potter when the doctor came to discuss his wife's surgery outcome. Because of Jason Blakeney's limited ASL vocabulary and lack of understanding of complex medical terminology, he was unable to adequately provide full interpretation and unable to facilitate adequate and effective communication between Mr. Potter and

Mrs. Potter's doctor.  As a result, Mr. Potter did not fully comprehend the nature and extent of Mrs. Potter's condition nor was he able to ask questions of the doctor.

**23.**

Prior to being discharged on November 18, 2017, Mrs. Potter and one of her nurses again discussed her need for an ASL interpreter during her discharge in order to facilitate adequate and effective communication with Ochsner's staff, nurses and physicians during her discharge process.  Having an ASL interpreter present during discharge was vital to Mr. and Mrs. Potter to obtain a full and complete understanding of her discharge instructions.  Regardless of her need for an ASL interpreter during the discharge process one was not provided.

**24.**

The methods of communication used by Ochsner to communicate with Mr. and Mrs. Potter - expecting them to read lips, pass notes using an iPhone and attempting to force a family member to act as an interpreter—were not appropriate under the circumstances and did not provide Mr. and Mrs. Potter with communication equivalent to that provided to hearing persons. These methods of communication did not allow them to fully understand and discuss Mrs. Potter's condition, her treatment, medication options, and discharge instructions.

**25.**

Ochsner's failure to provide Mr. and Mrs. Potter with effective auxiliary aids and services in the form of an ASL interpreter caused them to experience fear, anxiety, emotional distress, isolation, segregation, frustration, invasion of their civil rights, denial of self-determination, mental anguish, embarrassment, inconvenience, indignity, and/or humiliation.

**26.**

Ochsner, through its staff, employees, nurses, and/or doctors, knew or should have known of their obligations under the ADA, RA and Section 1557 to provide accommodations to individuals with disabilities, including individuals who are Deaf, and to develop policies to promote compliance with these statutes.

**27.**

Ochsner, through its staff, employees, nurses, and/or doctors, knew or should have known that the actions and/or inactions created an unreasonable risk of causing Mr. and Mrs. Potter greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person or companion would be expected to experience.

**28.**

The harm sustained by Mr. and Mrs. Potter herein was an expected and foreseeable consequence of Ochsner's failure to comply with the requirements and mandates of the ADA, RA and Section 1557.

29.

Ochsner, through its staff, employees, nurses, and/or doctors, failed to assess the communication needs and abilities of Mr. and Mrs. Potter.

30.

Despite Ochsner's explicit knowledge of its obligation to accommodate persons with disabilities – including individuals that are Deaf – Ochsner did not take adequate steps to ensure that it provided effective communication to Mr. and Mrs. Potter.

31.

As a result of Ochsner's failure to ensure effective communication with Mrs. Potter, she received services that were objectively substandard and inferior to those provided to hearing individuals.

32.

Ochsner's wrongful discrimination against Mr. and Mrs. Potter based on disability is reflected by Ochsner's failure to train its employees and promulgate effective policies of non-discrimination against Deaf individuals.

33.

Ochsner discriminated against Mr. and Mrs. Potter with deliberate indifference to their communication needs, causing them to endure humiliation, fear, anxiety, and emotional distress.

**34.**

Mrs. Potter will seek Ochsner's healthcare services in the future, whether by choice or necessity, she will become a patient at Ochsner Medical Center - Kenner due to her ongoing need for future medical care with Dr. James B. Wooldridge, Jr., Ochsner Bariatric Surgeon, in connection with her Gastric Bypass procedure and future weight loss medical procedures and treatment.

**35.**

Due to the ongoing discrimination Mr. and Mrs. Potter encountered, they reasonably anticipate that they will encounter discrimination again in the near future when Mrs. Potter next returns to Ochsner Medical Center.

## FIRST CAUSE OF ACTION:
## VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

**36.**

Mr. and Mrs. Potter reassert the allegations of paragraphs 1-35 in support of their claims against Ochsner for the violations of Section 504 of the rehabilitation Act of 1973, 29 U.S.C. § 794.

**37.**

At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Ochsner's conduct.

**38.**

At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Ochsner's conduct.

**39.**

At all times relevant to this action, Mr. and Mrs. Potter had substantial limitations to the major life activities of hearing and speaking and were individuals with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

**40.**

At all times relevant to this action, Ochsner offered a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

**41.**

Ochsner discriminated against Mr. and Mrs. Potter, solely based on disability, by denying them meaningful access to the services, programs, and benefits that Ochsner offered to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of 29 U.S.C. § 794.

**42.**

Ochsner also discriminated against Mr. and Mrs. Potter, solely based on disability, by denying them reasonable accommodation requests, in violation of 29 U.S.C. § 794.

**43.**

Mr. and Mrs. Potter are therefore entitled to and seek to recover compensatory damages for the harms and losses they sustained as a result of Ochsner's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

**44.**

Mr. and Mrs. Potter are further entitled to and seek an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a).

## SECOND CAUSE OF ACTION:
## VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

**45.**

Mr. and Mrs. Potter reassert the allegations of paragraphs 1-35 in support of their claims against Ochsner for the violations of Title III of the ADA, 42 U.S.C. § 12181, et seq.

**46.**

At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to Ochsner's conduct.

**47.**

At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the Ochsner's conduct.

**48.**

At all times relevant to this action, Mr. and Mrs. Potter were substantially limited in the major life activities of hearing and speaking and are a individuals with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

**49.**

Ochsner owns and operates a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

**50.**

Based on the above allegations as asserted herein, Ochsner discriminated against Mr. and Mrs. Potter, based on disability, in violation of Title III of the ADA and its implementing regulations.

**51**.

As set forth above, absent injunctive relief there is a real and immediate threat that Ochsner's actions will recur with Mr. and Mrs. Potter and Ochsner will again deny the necessary auxiliary aids and services to ensure effective communication the next time

Mrs. Potter is admitted to Ochsner Medical Center – Kenner for weight loss procedures and they will suffer future harm as a result.

**52**.

As set forth above an award of nominal damages will act as a deterrent to Ochsner from engaging in such violations in the future with Mr. and Mrs. Potter and with other Deaf individuals in similar circumstances and with similar needs as Mr. and Mrs. Potter.

**53.**

Mr. and Mrs. Potter are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, nominal damages and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

### THIRD CAUSE OF ACTION: <br> VIOLATIONS OF SECTION 1557 OF THE <br> PATIENT PROTECTION AND AFFORDABLE CARE ACT

**54.**

Mr. and Mrs. Potter reassert the allegations of paragraphs 1-35 in support of her claims against Ochsner for the violations of Section 1557 of the Patient Protection and Affordable Care Act, 42 USC § 18116.

**55.**

At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act, 42 USC § 18116 was in full force and effect and applied to Ochsner's conduct.

**56.**

At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated

the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

**57.**

At all times relevant to this action, Mr. and Mrs. Potter had substantial limitations

to the major life activity of hearing and speaking and were individuals with disabilities

within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42

USC § 18116.

**58.**

At all times relevant to this action, Mr. and Mrs. Potter's primary language for

communication was American Sign Language and not English; and Mr. and Mrs. Potter

had limited ability to read, write, speak, or understand English, and was an individual

with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

**59.**

At all times relevant to this action, Ochsner received federal financial assistance,

including Medicare and Medicaid reimbursements, and was principally engaged in the

business of providing health care. Therefore, Ochsner is a health program or activity

receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

**60.**

Ochsner discriminated and continues to discriminate against Mr. and Mrs. Potter solely based on disability, by denying her meaningful access to the services, programs, and benefits that Ochsner offers to other individuals and by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1557, 42 U.S.C. § 18116.

**61.**

Ochsner discriminated against Mr. and Mrs. Potter by failing to ensure effective communication by not providing an on-site qualified ASL interpreter as was required under the circumstances for this patient.

**62.**

Ochsner discriminated against Mr. and Mrs. Potter by denying reasonable accommodation requests.

**63.**

On information and belief, the refusal to provide an ASL interpreter to Mr. and Mrs. Potter is as a result of a policy or practice of Ochsner to prohibit or impede the use of on-site qualified ASL interpreters.

**64.**

Mr. and Mrs. Potter are therefore entitled to and seek to recover compensatory damages for the injuries and loss they sustained as a result of Ochsner's discriminatory conduct as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

**65**.

Mr. and Mrs. Potter are further entitled to and seek an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a).

## JURY DEMAND

**66.**

The Plaintiffs respectfully demands trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. and Mrs. Potter respectfully pray that this Court grant the following relief against the Defendants herein:

1. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Ochsner's policies, procedures, and practices subjected Mr. and Mrs. Potter to unlawful discrimination in violation of the RA, ADA, and Section 1557;

2.     Issue an injunction forbidding Ochsner from implementing or enforcing any policy, procedure, or practice that denies Deaf individuals, or their companions, meaningful access to full and equal enjoyment of their facilities, services or programs;

3.     Issue an injunction ordering the Defendants:

a.     To develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Mr. and Mrs. Potter and other Deaf individuals by failing to provide effective communication;

b.      To develop, implement, promulgate, and comply with a policy requiring that when a Deaf individual request an in-person on-site ASL interpreter as required for effective communication one will be provided as soon as practicable in all services offered by Ochsner;

c.     To develop, implement, promulgate, and comply with a policy to ensure that Ochsner will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Ochsner will provide ASL interpreters, videophones, and other communication services to ensure effective communication with Deaf individuals;

d.     To develop, implement, promulgate, and comply with a policy to ensure that Deaf individuals can communicate through the most appropriate

20

method under the circumstances, recognizing that the Video Remote Interpreter *(VRI)* is not appropriate in all medical situations;

e.    To create and maintain a list of ASL interpreters and ensure availability of such interpreters at any time of day or night;

f.    To train all employees, staff, and other agents on a regular basis regarding the rights of individuals who are deaf under the ADA, RA and Section1557;

g.    To train all employees, staff, and other agents on a regular basis regarding Ochsner's policies on how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain ASL interpreters when reasonably requested by Deaf individuals;

4.    Award to Mrs. Potter:

a.    Compensatory damages pursuant to the RA and SECTION 1557;

b.    Nominal damages pursuant to the ADA;

c.    Reasonable costs and attorneys' fees pursuant to the ADA, RA and Section 1557;

d.    Interest on all amounts at the highest rates and from the earliest dates allowed by law;

e.    Any and all other relief that this Court finds necessary and appropriate.

5.      Award to Mr. Potter:

      a.      Compensatory damages pursuant to the RA and Section 1557;

      b.      Nominal damages pursuant to the ADA;

      c.      Reasonable costs and attorneys' fees pursuant to the ADA, RA and Section 1557;

      d.      Interest on all amounts at the highest rates and from the earliest dates allowed by law;

      e.      Any and all other relief that this Court finds necessary and appropriate.


Respectfully Submitted:
**BIANCA LAW FIRM**

/s/ Dominick M. Bianca
**DOMINICK M. BIANCA (#26802)**
8212 Summa Ave.
Baton Rouge, Louisiana 70809
Telephone: (225) 925-2877
Facsimile: (225) 925-2875
Email: rusty@biancalawfirm.com
*Counsel for Plaintiff, Gary J. Potter*
*and Melissa C. Potter*

22